Marjorie U. Sullivan, Transferee v. Commissioner.
Sullivan v. Comm'r
Docket No. 18711.
United States Tax Court
1950 Tax Ct. Memo LEXIS 303; 9 T.C.M. (CCH) 2; T.C.M. (RIA) 50000; January 11, 1950
Vincent J. Malone, Esq., for the petitioner. Sheldon V. Ekman, Esq., for the respondent. DISNEY
*303 Memorandum Findings of Fact and Opinion DISNEY, Judge: This case involves transferee liability. The issues left for our consideration are whether the petitioner is liable as transferee of the assets of the estate of her husband as to income taxes unpaid by her deceased husband for the taxable period January 1, 1943, to March 18, 1943, because of (a) receipt of proceeds of insurance policies on his life payable to her, (b) receipt of real estate, (c) receipt of funds from savings accounts in the name of petitioner *304 as trustee for her husband, and (d) receipt of $303.61 as part of proceeds of sale of decedent's automobile, balance in his checking account, and proceeds of sale of corporate stock owned by him. Findings of Fact The facts were stipulated and we find, as follows: Petitioner was married and living with her husband, John J. Sullivan, during the year 1942, and up to the date of his death in 1943. John J. Sullivan died on March 18, 1943. The decedent, John J. Sullivan, filed his income tax return for the calendar year 1942 with the collector of internal revenue, second district of New York, and petitioner, as administratrix of his estate, filed an income tax return in the name of the decedent for the period from January 1, 1943, to March 18, 1943, with the collector of internal revenue, second district of New York. John J. Sullivan died intestate and petitioner qualified as administratrix of his estate on April 27, 1943. At the time of his death decedent owned a 1937 LaSalle sedan of the value of $350. Decedent maintained a checking account in his own name at the Rockefeller Center Branch of the Chase National Bank. At the date of death of the decedent, the balance in said *305 account was $253.61. Decedent was president of the Lord Electric Co., Inc. and at the date of his death owned stock of the said corporation of a value of $500. Said stock was sold by the administratrix of decedent's estate $500for. The funeral and burial expenses of decedent amounted to $1,520.75. The administratrix of decedent's estate withdrew the aforesaid balance of $253.61 on deposit in the Chase National Bank and applied same against the funeral expenses of decedent. Petitioner paid from her individual funds the balance of said funeral expenses in the amount of $1,267.14. The administratrix of decedent's estate delivered to petitioner the 1937 LaSalle sedan owned by the decedent at the time of his death and the proceeds of the sale of stock of Lord Electric Co., Inc. in the amount of $500. Said automobile and moneys were paid to petitioner under Section 200 of the Surrogate's Court Act of the state of New York and in partial reimbursement of the amount expended by petitioner from her personal funds for funeral expenses of the decedent. Following decedent's death, the Lord Electric Co., Inc. paid petitioner $6,000 in accordance with the following resolution of its board *306 of directors, dated June 8, 1943: "Further resolved that the corporation pay during the calendar year 1943, to Mrs. Majorie U. Sullivan, widow of Mr. John J. Sullivan, former president of the Lord Electric Co., Inc., a pension in the sum of $6,000.00 in recognition of the valuable services rendered the corporation by Mr. Sullivan during his lifetime." The decedent maintained certain policies of insurance upon his life, which by their terms became payable to petitioner, Marjorie U. Sullivan, his wife, as the designated beneficiary. Such policies and the proceeds received by petitioner therefrom were as follows: [Here follows a list of policies, the proceeds totalling $58,075.98.] Decedent paid all premiums on said policies, reserved the power to change the beneficiary of, to receive the cash surrender value of, and to assign said policies. Decedent made no assignment of any of said policies during his lifetime. Decedent owned two unimproved lots in Hempstead, New York, with a value at the date of his death of $710. Under the intestate laws of the state of New York an undivided one-third interest in said lots descended to petitioner. The remaining two-thirds undivided interest *307 in said lots descended to the decedent's children. During 1942 decedent purchased with his own funds United States Savings Bonds in the names of himself and petitioner as coowners. At the date of decedent's death, the said bonds had a value of $1,537.50. Petitioner paid no part of the purchase price of said bonds. On November 4, 1942, petitioner opened a savings account, No. X7050, at the Manufacturer's Trust Co. in her own name, in trust for decedent, with a deposit of $3,000. Said $3,000 was a gift to petitioner by decedent. At the date of decedent's death the balance in said account was $1,500, the remaining $1,500 having been lent to decedent by petitioner on December 30, 1942, and not repaid prior to decedent's death. Petitioner maintained savings account No. XX0648 in the Dollar Savings Bank in her own name, in trust for decedent. Petitioner deposited in this account sums received from decedent for household expenses. During 1942 and until March 18, 1943, petitioner deposited in said account $7,182.84, received from decedent, and on March 18, 1943, the balance in said account was $5,010.16. Petitioner maintained savings account No. X6486 in the Dollar Savings Bank, in *308 her own name, in trust for her daughter, Jacqueline. During 1942 and until March 18, 1943, petitioner deposited in said account $1,585, received from decedent, and on March 18, 1943, the balance in said account was $1,234.98. Said John J. Sullivan, the decedent, was solvent at all times subsequent to January 1, 1942. The proceeds of the aforesaid insurance received by petitioner from the insurance companies were in excess of the income taxes due from the estate, plus interest as prescribed by law. The assets of the decedent received by the administratrix of the estate of said John J. Sullivan were insufficient to pay his liabilities, including the said income tax liability of said decedent. His estate was insolvent. Within the time provided by law, respondent asserted Federal income tax liability against the estate of John J. Sullivan, deceased, for the period January 1, 1943, to March 18, 1943, in the total amount of $7,069.84, consisting of unpaid original tax is disclosed by the return filed for the said period. No part of the above-mentioned taxes was paid by the estate of the decedent, and the said tax, together with interest, remains due and unpaid. The assets, above *309 listed, were the only assets owned by the decedent at the date of his death, and all, except the two-thirds interest in real estate above listed, were received by the petitioner. Except for the payment of funeral expenses, as listed above, petitioner did not pay or exchange any assets of her own, for the assets received by her. All of the assets listed above were reported by the petitioner as part of decedent's gross estate, in the estate tax return, with the exception of the $6,000 pension and the balance in the two savings accounts. Ultimate Findings of Fact Petitioner received the assets of decedent's estate without consideration. The transfer of the assets of decedent's estate to the petitioner rendered his estate insolvent, without assets with which to pay the income taxes owed by the decedent; and the petitioner is liable at law and in equity as a transferee of the assets of her deceased husband, John J. Sullivan, in the amount of $7,000.71 and interest as by law provided. Opinion We have no question as to the primary liability of the decedent for the taxes involved. Only transferee liability is contested. The primary problem presented is whether the $58,075.98 proceeds *310 of insurance on decedent's life, received by the petitioner as beneficiary designated in the policies, renders her liable as a transferee under Section 311 (f) of the Internal Revenue Code. Subsection (f) defines transferee as follows: "As used in this section, the term 'transferee' includes heir, legatee, devisee, and distributee." Regulations 111, Section 29.311-1 states: "The term 'transferee' as used in this section includes an heir, legatee, devisee, distributee of an estate of a deceased person, the shareholder of a dissolved corporation, the assignee or donee of an insolvent person, the successor of a corporation, a party to a reorganization as defined in section 112, and all other classes of distributees." Though the law of New York is discussed in the briefs of the parties, state law does not apply to this question. Kieferdorf v. Commissioner, 142 Fed. (2d) 723. In that case the taxpayers' widow was held liable for his income taxes as his transferee where his estate was insolvent, and insurance proceeds payable to the estate were set over to her by the probate court, as exempt from execution. The court refers to the regulation defining *311 transferee and emphasizes "and all other classes of distributees". We have studied the various cases cited by the respective parties but think it unnecessary to analyze them in detail. The respondent, who of course has the burden in a transferee matter, relies primarily upon Pearlman v. Commissioner, 153 Fed. (2d) 560; Kieferdorf v. Commissioner, supra, and Christine D. Muller, 10 T.C. 678, in which insurance policies and the proceeds thereof were involved. Petitioner attempts to distinguish the Pearlman case, supra, by pointing out that the decedent husband there paid premiums while insolvent. However, we note that the policies had been assigned to the decedent prior to his insolvency and it is, therefore, reasonable to assume that premiums had been paid by him both before and after insolvency. Indeed the major portion of the premiums may have been paid while he was solvent, so far as the opinion reveals. In this case the decedent was solvent at all times subsequent to January 1, 1942. Whether he was solvent prior to that time or not the stipulated facts do not reveal. We are unable to find essential difference between the facts in the Pearlman *312 case, supra, and those here involved, so far as reliance by the petitioner upon the payment of premiums while insolvent, in that case, is concerned. The conclusion of the Court, that the widow was liable as transferee under the revenue act, does not appear to depend upon the payment of premiums while insolvent. In the Muller case, supra, we held the widow liable as transferee on facts parallel to those here involved, i.e., the decedent maintained several policies of insurance which became payable to the petitioner as designated beneficiary, she received the $9,800 proceeds thereof and gave no consideration for the assets of the decedent's estate, which she received. The facts, stipulated, indicate nothing as to solvency or insolvency of the decedent during his lifetime. The petitioner, however, seeking to distinguish the case, points out that therein the parties stipulated: "By reason of this distribution to petitioner, the estate of the decedent was thereby rendered insolvent and without funds or other property to pay its Federal income tax liabilities." Petitioner argues, therefore, in substance, that the distribution to the petitioner here did not, as there stipulated, render *313 the estate insolvent. It is true that the parties did not, in so many words in this case, stipulate as in that case that by reason of the distribution to petitioner the estate was rendered insolvent; but they did stipulate that the decedent was solvent from January 1, 1942, and that his estate was insolvent. We think that the inescapable effect of such stipulation under the facts here involved is that the receipt of the insurance proceeds by the petitioner rendered the estate insolvent. The amounts received by the petitioner, aside from the insurance proceeds, were not sufficient under the stipulation to discharge the decedent's debts, including his liability for $7,069.84 Federal income tax. Nothing but the receipt of the insurance proceeds by the petitioner could under the stipulated facts have caused the insolvency of the estate. The petitioner neither paid nor exchanged anything for such assets; therefore received them without consideration. The regulations, above referred to, and approved by repeated reenactment of the statutes, and, therefore, having the effect of law, include in the term "transferee" not only distributees of an estate of a deceased person but "all other classes *314 of distributees." Considering the obvious intent of the Federal statutes to collect income taxes from the assets of one owing them, together with the conclusion of Davis v. Modern Industrial Bank, 279 N. Y. 405, that the law of that state recognizes an insurance beneficiary as having a mere inchoate right or expectancy, if the insured, as in this case, has the right to change beneficiaries, and under the Pearlman, Kieferdorf, and Miller cases, supra, we conclude that there was a transfer to the petitioner within the language of Section 311 of the Internal Revenue Code, and that the petitioner is liable at law and in equity as transferee of the assets of her husband's estate for the income tax unpaid and owed by her husband. Inasmuch as the amount of the insurance proceeds is far greater than the amount of the decedents' income tax, here involved, it is considered unnecessary to examine the other questions presented by the record, Christine D. Muller, supra, as to minor items of assets received by the petitioner. Decision will be entered for the respondent.